# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| JULIANNA LYNN BENNETT, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:11-cv-00816** |
| v. | ) | **Judge Nixon/ Knowles** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security[1] | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain

judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff

was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended.

The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record.

Docket No. 12.  Defendant has filed a Response, arguing that the decision of the Commissioner

was supported by substantial evidence and should be affirmed.  Docket No. 21.  Plaintiff has also

filed a Reply.  Docket No. 22.[2]

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin should be substituted for Commissioner Michael J. Astrue as the Defendant in this suit.  No further action needs to be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

[2] The Court notes that Plaintiff did not obtain leave of Court to file her Reply. Nevertheless, the Court will address the arguments Plaintiff makes in this Reply.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I.  INTRODUCTION

Plaintiff filed her applications for DIB and SSI on January 14, 2008, with a protective filing date of December 21, 2007, alleging that she had been disabled since December 18, 2004, due to bipolar disorder and sleep apnea.  Docket No. 10, Attachment ("TR"), TR 55-58, 127-29, 130-34 .  Plaintiff's applications were denied both initially (TR 55, 56) and upon reconsideration (TR 57, 58).  Plaintiff subsequently requested (TR 82) and received (TR 97-119) a hearing. Plaintiff's hearing was conducted on April 22, 2010, by Administrative Law Judge ("ALJ") James W. Lessis.  TR 30-54.  Plaintiff and vocational expert ("VE"), Calvin Turner, appeared and testified.  *Id.*

On June 2, 2010, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations.  TR 13-29. Specifically, the ALJ made the following findings of fact:

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.
>
> 2.  The claimant has not engaged in substantial gainful activity since December 18, 2004, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3.  The claimant has the following severe impairments: degenerative joint disease, sleep apnea and depression (20 CFR 404.1520(c) and 416.920(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR

2

404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a reduced range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).  The claimant cannot engage in more than negligible climbing, balancing, stooping, kneeling, crouching or crawling.  Negligible means greater than zero and less than occasional, being closer to zero than occasional.  She can frequently finger, feel, handle and reach.  The claimant can tolerate negligible exposure to weather, cold, wet, hot, vibrations, moving mechanical machinery, electrical shocks, hazardous places, dust, fumes, gases, odors or poor ventilation.  She cannot tolerate more than minimal contact with co-workers, the public or supervisors.  The claimant can engage in only negligible operation of foot controls.  From a mental standpoint, the claimant retains the reasoning, mathematics and language skills to perform work with understanding and carrying out detailed but uninvolved written or oral instructions, dealing with problems involving a few concrete variables in or from standardized situations encountered on the job, performing basic arithmetic operations, and reading, writing, and speaking in simple sentences using normal work order.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on January 5, 1965 and was 39 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.  The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in

significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.  The claimant has not been under a disability, as defined in the Social Security Act, from December 18, 2004, continuing through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 18-26**.**

On August 10, 2010, Plaintiff timely filed a request for review of the hearing decision. TR 11.  On June 30, 2011, the Appeals Council issued a letter declining to review the case (TR 1-6), thereby rendering the decision of the ALJ the final decision of the Commissioner.   This civil action was thereafter timely filed, and the Court has jurisdiction.  42 U.S.C. § 405(g).  If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive.  *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record.  Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process.  *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991).  The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision.  *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[3] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.

> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of

---

[3]The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

6

> jobs in the national economy which the claimant could perform,
> given his or her age, experience, education, and residual functional
> capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175,

1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by

relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the

claimant is not significantly limited by a nonexertional impairment, and then only when the

claimant's characteristics identically match the characteristics of the applicable grid rule.

Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability

determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's

disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with

particularized proof of the claimant's individual vocational qualifications to perform specific

jobs, which is typically obtained through vocational expert testimony.  *See Varley v. Secretary*,

820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages

four and five above, the Commissioner is required to consider the combined effect of all the

claimant's impairments; mental and physical, exertional and nonexertional, severe and

nonsevere.  *See* 42 U.S.C. § 423(d)(2)(B).

### C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: 1) not according proper weight to the opinion

of Plaintiff's treating physician, Dr. Bassel; 2) improperly considering the VE's testimony;

3) improperly evaluating and assessing Plaintiff's credibility; 4) finding that Plaintiff's use of

marijuana was probative of her mental limitations; and 5) failing to find Plaintiff's obesity and urinary incontinence severe, and in failing to state the reasons why these conditions were not found to be severe. Docket No. 12-1. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1. Weight Accorded to the Opinion of Plaintiff's Treating Physician

Plaintiff maintains that the ALJ did not accord proper weight to the opinion of Dr. Bassel. Docket No. 12-1. Specifically, Plaintiff argues that Dr. Bassel's opinion that Plaintiff retained a less-than-sedentary residual functional capacity should be given complete deference because it was uncontradicted by other medical evidence. *Id.* Plaintiff further argues that the

ALJ failed to articulate the requisite good reasons for discounting a treating physician's opinion; and also that Plaintiff's reported daily activities were not inconsistent with Dr. Bassel's RFC. Docket No. 22.

Defendant responds that contrary to Plaintiff's assertion otherwise, Dr. Bassel's opinion regarding Plaintiff's physical and mental restricted is contradicted or unsupported by: the objective and clinical evidence of record; Plaintiff's lack of treatment for physical pain; the opinions of state agency consultants Drs. Downey, Kupstas, and O'Bryan; and Plaintiff's reported daily activities. Docket No. 21.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...
>
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs

and laboratory findings, the more weight we will give that opinion.
The better an explanation a source provides for an opinion, the more
weight we will give that opinion. ...

(4) Consistency.  Generally, the more consistent an opinion
is with the record as a whole, the more weight we will give to that
opinion.

(5) Specialization.  We generally give more weight to the
opinion of a specialist about medical issues related to his or her area
of specialty than to the opinion of a source who is not a specialist.

...

20 C.F.R. § 416.927(d) (emphasis added).  *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis

for rejecting the opinion.  *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  The Code of

Federal Regulations defines a "treating source" as:

[Y]our own physician, psychologist, or other acceptable medical
source who provides you or has provided you, with medical
treatment or evaluation and who has, or has had, an ongoing
treatment relationship with you.

20 C.F.R. § 404.1502.

Dr. Bassel treated Plaintiff for an extensive period of time, a fact that would justify the

ALJ's giving greater weight to his opinion than to other opinions, as long as that opinion is

consistent with, and supported by, the evidence of record.  As will be discussed below, however,

Dr. Bassel's opinion contradicts other substantial evidence in the record.

On April 20, 2010, Dr. Bassel completed a Medical Source Statement ("MSS") regarding

Plaintiff's "Ability to do Work-Related Activities (Physical)."  TR 628-30.  In that MSS, Dr.

Bassel opined that Plaintiff could occasionally and/or frequently lift and carry ten pounds; stand

and walk (with normal breaks) about two hours in an eight-hour workday; and sit (with normal

breaks) for about four hours total in an eight-hour workday.  TR 628.  Dr. Bassel also opined that

Plaintiff would need to alternate sitting, standing, or walking in order to relieve discomfort; and opined specifically that Plaintiff could sit for forty-five minutes at a time before needing to change position, and stand for twenty minutes at a time before needing to change position. *Id.* Dr. Bassel indicated that Plaintiff would need to walk around for approximately five minutes every hour. TR 629. Dr. Bassel also indicated that Plaintiff would need to shift between sitting, standing, and walking at will, and would need to lie down "at unpredictable intervals" once or twice per day. *Id.* Regarding postural activities, Dr. Bassel opined that Plaintiff could occasionally twist, stoop (bend), crouch, and climb stairs, but could never climb ladders. *Id.* Dr. Bassel also indicated that Plaintiff's abilities to reach, push, and pull were affected by her impairments. *Id.* As far as Plaintiff experienced environmental restrictions, Dr. Bassel opined that Plaintiff should avoid concentrated exposure to extreme heat and cold, wetness, humidity, and noise; should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation; and should avoid all exposure to hazards, such as machinery and heights. TR 630. Finally, Dr. Bassel opined that Plaintiff would experience daytime drowsiness and difficulty concentrating, and was unable to follow instructions, keep a work schedule, or relate to co-workers in a work situation, such that Plaintiff could be expected to miss work more than three times per month. *Id.*

Regarding the ALJ's consideration of Dr. Bassel's opinions, the ALJ demonstrated that he considered Dr. Bassel's prior treatment notes and his MSS. TR 22. Specifically, the ALJ stated:

> Ms. Bennett's psychiatric symptoms were described as low and stable by a Dr. John Bassel in December 2009. On February 23, 2010 the claimant was feeling well and reported the problem of constipation. She weighed 257 pounds. Ms. Bennett was described

as cooperative, in no acute distress, fully orientated and alert. She
exhibited normal posture and gait. The claimant had normal
examinations of her abdomen, chest and heart. Earlier in
November she was diagnosed with mild tenderness related to a
rash under her breasts. On a follow-up examination for pain in
April of 2010 the claimant was in no acute distress, fully
orientated, alert and cooperative. Ms. Bennett exhibited normal
mood and affect, speech and thought and also normal cognitive
functioning. She also exhibited 5/5 muscle strength, normal
sensations and reflexes and coordination and gait. The claimant
had normal range of motion at the neck, spine and upper
extremities but with stiffness noted at the knees.

Dr. Bassel opined on April 20, 2010 that the claimant was limited
to a significantly reduced range of sedentary work. She was
believed limited to sitting for only four hours, and standing and
walking combined for only two hours, in an eight-hour work day
secondary to back and knee pain and stiffness. Ms. Bennett was
limited to lifting ten pounds on an occasional basis due to her
lesions. It was opined further that she would be expected to miss
more than three days of work monthly.

*Id.*

Ultimately, however, the ALJ rejected Dr. Bassel's opinion. TR 24. Contrary to

Plaintiff's assertion that "the ALJ failed to give sufficiently specific good reasons" for rejecting

the opinion of Dr. Bassel, the ALJ provided numerous and specific reasons for this rejection:

In the present case, the undersigned finds good cause to reject Dr.
Bassel's opinion contained in Exhibit 10F in that it was brief and
conclusory. This opinion lacks persuasive weight and is not
substantiated by the clinical record as a whole to include
supporting medical evidence as well as diagnostic testing and
documented medication usage. The claimant has exhibited 5/5
muscle strength, normal gait and coordination, and had normal
examinations of her sensations and reflexes (Exhibit 10F). She
also had an essentially normal physical examination in July 2006
(Exhibit 2F). Ms. Bennett's extensive daily activities to include
caring for her son, attending church, driving, doing laundry,
walking daily, shopping, and performing housework are also
unsupportive of her alleged limitations and restrictions (Exhibits
3E and 7E). His opinion is also unsupported by the opinions of the

12

non examining State agency medical experts of Exhibits 4F-5F and 8F. And in Exhibits 2E and 6 E she listed her disabling conditions or illnesses as involving only mental or emotional impairments and sleep apnea, making no mention of disabling physical conditions or impairments and reporting medications prescribed only for the treatment of hypertension and a bipolar disorder.

Additionally, the determination of disability requires an understanding of the vocational factors of age, education, work experience and residual functional capacity, an evaluation that is outside the training and experience of the treating physician. While the medical considerations may be withing Dr. Bassel's expertise, the undersigned concludes that his opinion cannot be adopted. Moreover, his assessment of Ms. Bennett's functional capacity is not too far removed from the undersigned's assessment of what the claimant can sustain in an eight-hour work day.

*Id.*

As can be seen, the ALJ clearly discussed various medical and testimonial evidence of record that contradicts Dr. Bassel's opinion. As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* When the opinions of treating physicians are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 C.F.R. §416.927(e)(2). As such, the Regulations do not mandate that the ALJ accord Dr. Bassel's evaluation controlling weight. Accordingly, Plaintiff's argument fails.

## 2. Reliance Upon Vocational Expert Testimony

Plaintiff argues that the ALJ erred in his consideration of the VE's testimony because the ALJ's decision is inconsistent with the hearing transcript. Docket No. 12-1. Specifically,

Plaintiff argues that the ALJ's decision discusses jobs existing in the state of *Texas* and in the national economy, while the hearing transcript shows that the VE testified to jobs existing in the state of *Tennessee* and in the national economy. *Id.*

Defendant responds that the ALJ inadvertently substituted "Texas" for "Tennessee" in his decision. Docket No. 21. Defendant maintains that such a typographical error is not grounds for remand because there is no indication that fixing the error would result in a different outcome. *Id.*

As explained above, the Commissioner has the burden at step five of the sequential evaluation process of establishing the claimant's ability to work by proving the existence of a significant number of jobs in the national economy that the claimant could perform, given his or her age, experience, education, and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). The ALJ may rely on the testimony of a vocational expert in response to a hypothetical question as substantial evidence of the existence of a significant number of jobs that the claimant is capable of performing as long as the hypothetical question accurately represents the claimant's limitations. *See Varley*, 820 F.2d at 779 (*quoting O'Banner v. Secretary*, 587 F.2d 321, 323 (6th Cir. 1978)).

The ALJ in the case at bar did rely on the VE's testimony as substantial evidence of the existence of a significant number of jobs that the Plaintiff is capable of performing. At the hearing, the ALJ asked the VE two questions about the existence of jobs capable of being performed by a hypothetical person with specified residual functional capacities. TR 49-52. In response to the first question, the VE testified that such jobs did exist, stating:

One is a table worker and table worker is sedentary, unskilled,

SVP 2, the RML's are 1, 1, 1, and the <u>DOT</u> code is 739.687-182, in the state of Tennessee there are 12,270 employed, nationally, 464,000. Also a woodworking dowel inspector, that is also sedentary, unskilled, SVP 2, RML's are 1, 1, 1, <u>DOT</u> code is 669.687-014, in the state of Tennessee there are 1,840 employed and nationally, 64,000. Additionally a optical goods lens inserter, that is sedentary, unskilled, SVP 2, the RML's are 1, 1, 1, the <u>DOT</u> code is 713.687-026, the state of Tennessee there are 2,500 employed and nationally, 81,000.

TR 51.

In his decision, the ALJ relied on this answer in finding that a significant number of jobs exist in the national economy that Plaintiff can perform, explaining:

> To determine the extent to which these limitations erode the unskilled sedentary occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as table worker at 12,270 and 464,000 jobs, as a dowel inspector at 1,840 and 64,000 jobs, and as an optical goods lens inserter at 2,500 and 81,000 jobs, all existing in the state of Texas and the national economy, respectively.

TR 26.

As can be seen, the only discrepancy between the VE's testimony and the ALJ's decision is that the ALJ stated that the VE testified to jobs in the state of Texas, while the VE actually testified to jobs in the state of Tennessee.

The substance of the ALJ's decision demonstrates that he properly considered the VE's testimony: he correctly reported both the job titles and the exact number of jobs that the VE testified to as existing at the state and national levels. TR 26. The ALJ conducted the hearing in the state of Tennessee and was aware that Plaintiff lived in the state of Tennessee, having

15

questioned her about her drive from Springfield.  TR 32, 40.  The ALJ never mentioned the state

of Texas in relation to Plaintiff either during the hearing or, outside the one instance at issue

here, in his decision.  *See* TR 13-54.  Moreover, the ALJ did not object to the VE's testifying

about jobs in Tennessee.  TR 49-52.  The Court also notes, and considers as a possible

explanation for the misstatement, that the VE testified via telephone from the state of Texas.  TR

32.  In light of these factors, the Court considers the ALJ's misstatement harmless error.

Therefore, this claim fails.[4]

### 3.  Plaintiff's Credibility

Plaintiff argues that the ALJ failed to indicate either the weight he accorded to Plaintiff's

statements, or the reasons for according that weight, as required by SSR 96-7P.  Docket No. 12-

1.  Plaintiff further contends that the ALJ's decision was not supported by substantial evidence

because the ALJ focused on Plaintiff's activities of daily living, and disregarded medical

evidence showing that Plaintiff is disabled.  *Id.*

Defendant responds that the ALJ properly evaluated Plaintiff's credibility.  Docket No.

21.  Specifically, Defendant maintains that the ALJ considered Plaintiff's testimony regarding

her activities of daily living, the medical evidence of record, and two reports in which Plaintiff

stated that she was unable to work due to reasons other than her alleged impairments.  *Id.*

---

[4]  Additionally, the Sixth Circuit has noted that a reviewing court may not go beyond the
administrative record in finding a basis for its decision.  *Calkins v. Sec'y of Health and Human
Servs.*, 793 F.2d 1290, 1986 WL 17083, at *2 (6th Cir. May 7,1986) (unpublished disposition).
The Sixth Circuit has also noted that in making its decision,"[n]othing in the [Social Security
Act] requires the District Court to ignore the real finding of the ALJ and instead blindly follow
the transcriber's version of the finding."  *Id.*  Rather, the Sixth Circuit has condoned the lower
court's "examin[ing] the opinion as a whole to interpret the true meaning of the ALJ's findings."
*Id.*  For the reasons stated above, an examination of the record as a whole supports the Court's
finding that the ALJ properly considered the VE's testimony.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition *or* (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24) (Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other."). Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree that it prevents an individual from engaging in substantial gainful activity." *Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an

ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the instant case, the ALJ considered Plaintiff's statements, noting:

> At the administrative hearing the claimant testified that she was unable to work because of a long-term bipolar disorder. Ms. Bennett alleged a nervous breakdown in 2004 and reported receiving medical treatment and prescribed medications for her disorder. The claimant also alleged a bladder disorder, reporting that she has to frequently go to the restroom and that she experiences accidents. She reported hallucinations occurring weekly that were helped by prescribed medications. Ms. Bennett alleged diminished concentration and attention as well as difficulty following instructions. The claimant alleged further sleep apnea for which she does not use a CPAP machine and that she experiences the adverse side-effects of jumpiness from a psychotropic medication. Ms. Bennett alleged cysts on her arms that hurt at a pain level of 10 and which are treated with ibuprofen. In describing her daily activities she reported that she got her son off to school, did some housework, drove, napped, attended church, shopped and watched television. Ms. Bennett alleged significant physical limitations and disrupted sleep. She reported chronic but untreated hand and leg pain that limits her significantly.

TR 20.

After considering the record as a whole, including evidence of Plaintiff's underlying medical condition (TR 20-22) the ALJ found that Plaintiff's statements regarding the degree of her restrictions and limitations were not credible (TR 23). The ALJ specifically stated:

> Although the documentary record establishes an underlying medical condition capable producing some pain and limitations in overall functioning, the substantial evidence fails to corroborate the degree of restrictions and limitations as alleged by the claimant.

18

TR 20.

In reaching this decision, the ALJ articulated that Plaintiff's alleged disabling limitations and restrictions were contradicted by medical evidence in the record. *Id.* Specifically, the ALJ noted:

> Pertinent to this determination are her progress notes which show that she has a history of inconsistent periods of seeking medical treatment for what Ms. Bennett has described as chronic disabling impairments, her medication usage as well as periods of no sustained medication usage, and the failure of objective medical evidence that has produced clinical findings consistent with and supportive of claimant's subjective complaints and allegations. Numerous diagnostic tests have been completed and have been found to be negative for abnormalities consistent with the frequency and severity of the claimant's subjective complaints and allegations. The objective evidence of record, while unsupportive of the claimant's alleged limitations and restrictions, it [*sic*] supportive of and consistent with an individual who can meet the demands of at least sedentary work.

*Id.*

The ALJ also considered that Plaintiff's complaints of disabling limitations were inconsistent with other evidence in the record, including her treatment history, her record of non-compliance with treatment, her denial of physical problems, and her attribution of moodiness to factors other than bipolar disorder. *Id.* Specifically, the ALJ found that:

> Ms. Bennett has alleged that she is unable to work due to her weight, depression and bipolar disorder, sleep apnea, adverse side-effects from medication, disrupted sleep, untreated leg and hand pain and arm pain at a level of 10/10. However, her progress notes show that her alleged pain was treated with only over-the-counter-ibuprofen, she has not exhibited any muscle wasting or atrophy despite alleging significant physical limitations, has sought and received no more than intermittent medical treatment, her medical history is characterized by sustained non compliance regarding treatment, medication and use of CPAP machine, she has evinced normal gait and station, lost significant weight, reported only hand

jerking from lithium (Exhibit 6E), had essentially normal physical examinations and she has reported significant medical improvement from medication when she is compliant. And her treating physician, Dr. Rhodes, refuse [*sic*] to provide her a requested medical source statement (Exhibit 8E).

The paucity of supporting treatment notes for her allegations of upper extremity cysts with pain at a level of 10/10, hand and leg pain, a bladder disorder, weekly hallucinations, and severe depression and extreme nervousness around others despite medications and therapy (Exhibit 7E) must also be considered probative. Also probative is her use of marijuana (Exhibit 1F) concurrent with allegations of a long-term bipolar disorder in that this drug is a mind-altering substance. And on occasions the claimant has denied physical problems and reported moodiness related to her menstrual cycle and that her symptoms were controlled for the most part with medication and that her psychiatric symptoms were low and stable. All of these inconsistencies must be considered when determining Ms. Bennett's credibility in general.

TR 23.

The ALJ also considered his observations of Plaintiff at the hearing. *Id.* He noted that Plaintiff's credibility was further undermined because she did not exhibit, and the record did not establish her having exhibited, the signs of an individual who suffers constant pain. *Id.* Specifically, the ALJ found that:

The claimant does not exhibit the stigmata frequently observed in an individual who suffers constant unremitting pain (and disrupted sleep) which is not responsive to therapeutic measures. Generally, when an individual has suffered severe pain for a long period of time, there are observable signs such as drawn features, expressions of suffering, significant weight loss and poor overall health. Chaney v. Califano, 588 F.2d 958 (5th Cir. 1978). In the present case, none of the claimant's treating or examining physicians have reported observing any of these signs on a sustained basis. Indeed, the claimant has been described as having normal thought and speech, a normal mood, appropriate judgment, cooperative, fully orientated, with normal cognitive functioning and in no acute distress. Given the claimant's prior statements and

> testimony with respect to the severity of her subjective complaints,
> to include pain, it is reasonable to expect one or more of these
> stigmata would be frequently present and observed.  The absence
> of such observed signs on any sustained basis undermines Ms.
> Bennett's credibility as to the extant [*sic*] she alleges her physical
> condition produces pain of such severity so as to rule out the
> performance of essentially all work-related activities.

TR 23-24.

Additionally, the ALJ considered that Plaintiff's allegations were contradicted by her

reported daily activities.  TR 24.  Specifically, the ALJ stated:

> Ms. Bennett's extensive daily activities to include caring for her
> son, attending church, driving, doing laundry, walking daily,
> shopping, and performing housework are also unsupportive of her
> alleged limitations and restrictions (Exhibits 3E and 7E).

*Id.*

As can be seen, the ALJ did not base his decision simply on Plaintiff's daily activities,

but rather, properly considered the record as a whole. The ALJ's decision specifically addresses

in great detail not only the medical evidence, but also Plaintiff's testimony and her subjective

claims, clearly indicating that these factors were considered.  TR 20-24.  It is clear from the

ALJ's detailed articulated rationale that, although there is evidence which could support

Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with

Plaintiff's allegations.  This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective

medical evidence against Plaintiff's subjective claims of pain and reach a credibility

determination.  *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th

Cir. 1981).  An ALJ's findings regarding a claimant's credibility are to be accorded great weight

and deference, particularly because the ALJ is charged with the duty of observing the claimant's

demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

   The ALJ observed Plaintiff during her hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

## 4. Plaintiff's Marijuana Use

   Plaintiff contends that the ALJ erred by finding that Plaintiff's use of marijuana was probative of her mental limitations. Docket No. 12-1. Specifically, Plaintiff contends that the ALJ failed to consider SSR 82-60. *Id.* Plaintiff also contends that there is a lack of evidence in the record to support the ALJ's decision that marijuana was probative in this case, and that greater weight should be given to the effect that the diagnosis of bipolar disorder has on her ability to work. *Id.* Plaintiff argues that Plaintiff's marijuana use should not have been a factor in the ALJ's credibility analysis, or in his assessment of the severity of Plaintiff's mental limitations, because there is no evidence in the record that Plaintiff used marijuana after ages eighteen or nineteen. *Id.*

Defendant responds that SSR 82-60 is not pertinent to the case at bar, as the ALJ did not find that Plaintiff suffered from a drug addiction. Docket No. 21. Defendant also argues that it was appropriate for the ALJ to note that Plaintiff had started smoking "a mind-altering substance" at the same time that she first sought mental health treatment. *Id.*

Plaintiff's contention that the ALJ erred in failing to consider SSR 82-60, SSR 82-60 is simply inapplicable to the facts at hand. Social Security Ruling 82-60 clarifies the Social Security Administration's policy in evaluating disability "where drug addiction or alcoholism is present." SSR 82-60, 1982 WL 31383, at *1 (1982). This ruling instructs ALJs only in their consideration of diagnosed drug addicts or alcoholics. *See id.* It is not a broad policy statement applicable whenever an ALJ considers a claimant's drug use.

In the case at bar, the ALJ did not find that Plaintiff was a drug addict. Regarding Plaintiff's drug use, the ALJ stated:

> She reported having abusing [*sic*] marijuana and having a criminal record....
>
> . . .
>
> Also probative is her use of marijuana concurrent with allegations of a long-term bipolar disorder in that this drug is a mind-altering substance.

TR 21, 23.

These are the only two mentions of Plaintiff's drug use in the ALJ's extensive decision, and they are not findings that Plaintiff was a drug addict. In fact, the ALJ explicitly states that her drug use was simply "probative" in relation to her claims. TR 23. Plaintiff's marijuana use was part of the record, and the ALJ is charged with considering the record in its entirety. Plaintiff's assertion that this should be disregarded because she denied using marijuana after age

eighteen or nineteen is unpersuasive.

The ALJ properly analyzed Plaintiff's marijuana use in the context of the medical evidence of record. The Regulations do not require more. Therefore, the ALJ's determination must stand.

## 5. Severity of Plaintiff's Obesity and Urinary Incontinence

Plaintiff contends that the ALJ failed to consider her obesity or state why Plaintiff's obesity was not found severe. Docket No. 12-1. Specifically, Plaintiff maintains that "the ALJ did not consider or even mention the claimant's obesity and what effect her obesity would have on her ability to work." *Id.* Plaintiff further contends that the ALJ failed to find Plaintiff's urinary incontinence severe, and also failed to consider what effect Plaintiff's bladder and urinary problems would have on her ability to work. *Id.* Plaintiff notes that Plaintiff's testimony and medical records demonstrate that Plaintiff was taking VESIcare for her bladder. *Id.*

Defendant responds that the ALJ properly considered Plaintiff's obesity. Docket No. 21. Defendant argues that the ALJ considered Plaintiff's struggles with obesity; that Dr. Downey found no severe physical impairments; and that Dr. Bassel failed to mention limitations due to obesity. *Id.* Regarding Plaintiff's urinary incontinence, Defendant responds that Plaintiff failed to provide any indication of how her urinary problem would impact her ability to perform substantial gainful activity. *Id.*

An ALJ's evaluation of the severity of a claimant's impairments is governed by the Regulations, which state:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment ....

20 C.F.R. § 404.1520(c).

Regarding obesity in particular, SSR 02-1p states in pertinent part:

> [O]besity is a "severe" impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities. . . . Therefore, we will find that an impairment(s) is "not severe" only if it is a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the individual's ability to do basic work activities. . . .
>
> There is no specific level of weight or BMI [Body Mass Index] that equates with a "severe" or a "not severe" impairment. Neither do descriptive terms for levels of obesity (e.g., "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes. Rather, we will do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe.

SSR 02-01p (Cum. Ed. 2002).

The Regulations define "basic work activities" to mean:

> [T]he abilities and aptitudes necessary to do most jobs. Examples of these include –
>
> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers, and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

Contrary to Plaintiff's contention, the ALJ considered Plaintiff's obesity at numerous points in his decision. Specifically, the ALJ explained:

25

In January 2004 it was noted that the claimant was using no medication and that she had sleep apnea and had actually discarded her CPAP machine while being described as moderately obese.

In April 2006 the claimant was seen for a mental status examination required for a possible bypass surgery. The claimant stated that with a gastric bypass she hoped to return to work. . . . The claimant denied any physical problems and she weighed 314 pounds. She reported being fired from her job due to bronchitis and possibly fatigue due to weight gain. . . . In November 2006 she was dieting and walking one mile daily and had lost 15 pounds.

. . .

She was noted to have irregular sleep patterns and was to possibly have a gastric bypass to treat her sleep apnea.

. . .

On February 23, 2010 the claimant was feeling well and reported the problem of constipation. She weighed 257 pounds. Ms Bennett was described as cooperative, in no acute distress, fully orientated and alert. She exhibited normal posture and gait. The claimant had normal examinations of her abdomen, chest and heart.

. . .

On July 7, 2006 Ms. Bennett was seen for urgency. She had a normal physical examination other than her bladder and she weighed 278 pounds. In October 2006 the claimant was seen for a boil on her upper right thigh. She weighed 250 pounds. In January 2007 Ms. Bennett weighed 241 pounds and had a normal examination of her cardiovascular system.

. . .

Ms. Bennett has alleged that she is unable to work due to her weight, depression and bipolar disorder, sleep apnea, adverse side-effects from medication, disrupted sleep, untreated leg and hand pain and arm pain at a level of 10/10. However, her progress notes show that . . . she has . . . lost significant weight . . . .

TR 21-23 (internal citations omitted).

Also contrary to Plaintiff's contention, the ALJ considered Plaintiff's urinary incontinence. Specifically, the ALJ stated:

> The claimant also alleged a bladder disorder, reporting that she has to frequently go to the restroom and that she experiences accidents.
>
> . . .
>
> On July 7, 2006 Ms. Bennett was seen for urgency. She had a normal physical examination other than her bladder and she weighed 278 pounds.
>
> . . .
>
> When last seen on November 2, 2007 for a painful bladder the claimant had normal examinations of her lungs and heart.
>
> . . .
>
> The paucity of supporting treatment notes for her allegations of ... a bladder disorder ... must also be considered probative.

TR 20, 22 (internal citations omitted).

As can be seen, the ALJ discussed both Plaintiff's obesity and her urinary incontinence, but ultimately found that neither of these conditions limited her ability to do basic work activities:

> In activities of daily living, the claimant has mild restriction. The claimant engages in a wide range of daily activities.
>
> . . .
>
> Ms. Bennett's extensive daily activities to include caring for her son, attending church, driving, doing laundry, walking daily, shopping, and performing housework are also unsupportive of her alleged limitations and restrictions.

TR 24.

The ALJ additionally considered that Plaintiff had denied physical problems, even while at the higher end of her recorded weight: "The claimant denied any physical problems and she weighed 314 pounds." TR 21. This denial supports the ALJ's finding that Plaintiff's ability to perform basic work activities was not limited by her obesity or urinary incontinence.

Moreover, the ALJ considered other instances where Plaintiff had failed to mention

obesity or urinary incontinence as a concern:

> In March 2007 she reported that she was capable of caring for her son and wished to return to work. Her primary problem was her relationship with her boyfriend. In the following May the claimant stated that she was doing pretty well and was about to graduate from a job corps. On October 5, 2007 Ms. Bennett missed her appointment because she was working.
>
> . . .
>
> On February 23, 2010 the claimant was feeling well and reported the problem of constipation. She weighed 257 pounds.
>
> ...
>
> And in Exhibits 2E and 6E she listed her disabling conditions or illnesses as involving only mental or emotional impairments and reporting medications prescribed only for the treatment of hypertension and a bipolar disorder.

TR 21-22, 24 (internal citations omitted).

While the ALJ gave little weight to Dr. Bassel's opinion to the extent that his opinion described a less-than-sedentary RFC, the ALJ noted that Dr. Bassel found that Plaintiff's muscle strength, sensations, reflexes, coordination, and gate were all unaffected by Plaintiff's obesity. TR 22. Specifically, the ALJ stated:

> On a follow-up examination for pain in April of 2010 the claimant was in no acute distress, fully orientated, alert and cooperative. Ms. Bennett exhibited normal mood and affect, speech and though and also normal cognitive functioning. She also exhibited 5/5 muscle strength, normal sensations and reflexes and coordination and gait. The claimant had normal range of motion at the neck, spine and upper extremities but with stiffness noted at the knees.

*Id.*

The ALJ also considered a physical examination where neither Plaintiff nor the physician raised obesity as a concern. *Id.* While this examination did note that Plaintiff suffered a bladder problem, it did not describe any limitations that Plaintiff would face as a result. *Id.* Regarding

this examination, the ALJ stated:

> On July 7, 2006 Ms. Bennett was seen for urgency. She had a
> normal physical examination other than her bladder and she
> weighed 278 pounds.

TR 22.

Further, the ALJ articulated that Plaintiff's weight loss was inconsistent with her claimed

inability to work:

> Ms. Bennett has alleged that she is unable to work due to her
> weight . . . . However, her progress notes show . . . she has . . . lost
> significant weight . . . .
> . . .
> All of these inconsistencies must be considered when determining
> Ms. Bennett's credibility in general.

TR 23.

As can be seen, the ALJ thoroughly considered the record regarding Plaintiff's obesity

and urinary incontinence. Ultimately, the ALJ found that neither of these conditions would

cause significant mental or physical limitations in Plaintiff's ability to do basic work activities.

This determination is supported by substantial evidence showing that Plaintiff did not suffer

significant limitations due to her weight or urinary incontinence, and by Plaintiff's own failure to

report functional limitations on account of these conditions. Accordingly, the ALJ's decision

fully accords with the requirements of 20 C.F.R. Section 404.1520(c) and SSR 02-01p in finding

that neither Plaintiff's obesity nor urinary continence was severe. Therefore, Plaintiff's claim

fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for

Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner

be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge